Steffen v. Mayer.

STEFFEN v. MAYER *et al.*, *Appellants.*

1. **Negligence**: MASTER AND SERVANT : RISKS INCIDENT TO EMPLOY-
MENT.   A person entering the employment of another, takes upon
himself the ordinary risks and perils incident to the business in
which he engages, and this includes the negligent acts of a fellow-
servant, unless the master has been negligent in employing or
retaining in his services the servant in fault.

2. ———: ———: DUTY OF MASTER.   It is the duty of the master, on
the other hand, to use reasonable and ordinary care in guarding
the servant against extraordinary perils, not incident to the employ-
ment.

3. ———: ———.   The plaintiff was a laborer at defendant's foundry
and was directed by the defendant and his superintendent to
unload from a wagon a mill brought to the foundry for repair.
The driver of the team left the horses without unhitching the traces
or blocking the wheels, and while plaintiff and his co-laborers were
unloading the mill, it fell on plaintiff's foot by reason of the horses
taking fright at a passing railroad train.   *Held* that the danger
was one which was incident to plaintiff's employment, and should
have been guarded against by him, and that, therefore, he was not
entitled to recover.

*Appeal from St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

REVERSED.

*Broadhead & Haeussler* for appellants.

(1)   There was no actionable negligence on the part
of defendants shown.   If there was inadvertence that
does not constitute culpable negligence. *Brown v. Rail-
road*, 50 Mo. 461 ; *Barton v. Railroad*, 52 Mo. 253.
(2) Where in an action founded on the negligence of
defendant, plaintiff's evidence shows that his own neg-
ligence directly contributed to produce the injury, he

disproves the case alleged, and cannot recover. *Buesch-ing v. Gas Co.*, 73 Mo. 229 ; *Flynn v. Railroad*, 78 Mo. 195 ; *Milburn v. Railroad*, 86 Mo. 104. (3) A servant cannot recover damages of the master for injuries received while obeying the latter's order, if he had time to deliberate, and voluntarily and with knowledge of the peril, placed himself in a position in which he was more than likely to be injured. *Coombs v. Railroad*, 102 Mass. 572 ; *Sullivan v. India*, 112 Mass. 396 ; *Turner v. Railroad*, 74 Mo. 602 ; *McDermott v. Railroad*, 87 Mo. 285. (4) The master is not liable to a servant for the negligence of a fellow-servant. *Devitt v. Railroad*, 50 Mo. 302; *Thorpe v. Railroad*, 89 Mo. 650.

*Kerr, Gibson & Kerr* for respondent.

BLACK, J.—The plaintiff was a laborer at the defendants' foundry, and in general worked at the kiln, burning bone black. During a period of five years, he had often assisted in loading and unloading mills, when taken out for repair. On the present occasion a new mill, consisting of three pieces, came to the factory on defendants' wagon, drawn by a three-horse team. The road was muddy, so that the team had to stop one hundred and fifty yards from the mill and within fifteen or twenty feet of a railroad track. Whilst the plaintiff and others were unloading the mill, the horses became frightened at an approaching train and a part of the mill fell on plaintiff's foot, inflicting the injuries of which he complains.

The instructions given permitted a recovery by the plaintiff, if the defendants or their superintendent negligently failed to block the wheels of the wagon, or to have some one in charge of the team, or to detach the team from the wagon. The appellants insist that on the plaintiff's own showing he was injured by his own negligence and that of his fellow-servants ; and for this

reason ought not to recover. On this point the plaintiff testified : "Mr. Mayer (one of the defendants) told me to tell the driver to stop there ; the driver came and said he knew where to stop. Mr. Hardesty, the superintendent, called five of us and said 'be ready to unload that mill' ; 'he told us to put the plank there and go to work.' He said 'go ahead and take it off,' that was all he said. We knew how to do the job. It was muddy. The wheels were not blocked ; there was nothing to block them with ; no one had charge of the horses ; the driver was helping us; the traces were not unhitched. Hardesty was standing about five steps from us when the accident occurred, facing north ; the train came from the north ; I was facing south and did not see the train ; horses were standing with heads to the south ; no one had hold of the lines. As soon as the team started the wagon went forward ; and took the board off with the mill which was on it ; the mill fell on my foot."

Other evidence tends to show that Mayer was present at first and told the driver to unhitch his horses. He was not present when the accident occurred. One piece of the mill had been taken off, and it was the second piece which fell ; the other one was unloaded at the factory. There is no evidence showing or tending to show negligence in employing the laborers, who were at work with plaintiff; nor can any fault be attached to defendants on account of what Mr. Mayer or Hardesty did do or say, and the fault on their part, if any, was one of omission.

The question is whether it became the duty of Hardesty to personally see to it that the wheels of the wagon were blocked, or the team unhitched, or that the driver remained with the horses. A person entering the employment of another takes upon himself the ordinary risks and perils incident to the business in which he engages ; and this includes the negligent acts of a fellow-servant, unless the master has been negligent in employing or retaining in his services the servant in fault. On the

other hand, it is the duty of the master to use reasonable and ordinary care in guarding the servant against extra-ordinary perils, not incident to the employment. This duty is classed among the personal or absolute duties of the master. The duty may be delegated to an agent, but for negligence in the agent in the performance thereof the master is liable. The negligence is his negligence. Wood on Mast. & Ser. sec. 391. In other words, it is the duty of the master, so far as he can, by the use of ordinary care, to avoid exposing his servants to extraordinary risks, which they could not reasonably anticipate. Shear. & Red. on Neg. [3 Ed.] sec. 93.

Conceding that Hardesty represented the defendants as their agent, and that his negligence was their negligence, still it seems to us that it would be pushing the doctrine just stated too far to apply it to a case like the present one. The plaintiff and his co-laborers, including the teamster, knew of the existence of the railroad and that trains were constantly passing back and forth. The teamster, in the absence of any proof to the contrary, must be presumed to have known the disposition of his horses, whether they would become frightened from passing trains, and how to secure them against accident. In the absence of any contrary proof, it must be assumed it was his duty to look after his team. The plaintiff and those engaged in unloading the mill, were in no way restrained from taking any precautionary measure they saw fit. The necessity of taking some precautionary measure to avoid accident was just as obvious to them as to the superintendent. The danger was not an extraordinary one, but one incident to the business, and which they could easily have anticipated. The superintendent had a right to presume that they would take some measure for their own protection, the necessity of which was as obvious to them as to him. Where a suitable machine is put in the hands of a competent servant, he must exercise his judgment in the use of it;

and so here it was the duty of the servant to guard against accidents incident to the business in which they were engaged and which were open to their observation. We can but conclude that the evidence shows, and only tends to show, an injury resulting solely from the want of care on the part of the plaintiff and his co-laborers.

Where a servant is injured by the commingling negligence of a fellow-servant and of the master, different considerations arise. We do not conceive that the evidence here tends to present such a case.

Judgment reversed. RAY, J., absent. The other judges concur.