Deweese v. The Meramec Iron Mining Co.

CORNELIUS DEWEESE, Respondent, v. THE MERAMEC IRON MINING COMPANY, Appellant.

St. Louis Court of Appeals, May 9, 1893; Motion for Certification of Cause to the Supreme Court Sustained June 20, 1893.

1. **Mines**: DUTY OF MASTER TO USE REASONABLE CARE TO PREVENT INJURY TO EMPLOYES. When persons at work in a mine are, owing to the condition of its slopes, in danger of injury from stones rolling down these slopes, and the owner of the mine knows of this danger, it is his duty to use reasonable care to prevent injury to his employes therefrom.

2. **Master and Servant**: EFFECT OF NEGLIGENCE OF FELLOW-SERVANT. In an action by a servant against his master for personal injuries, it is only when the negligence of a fellow-servant is the whole cause of these injuries that it will avail the master as a defense.

3. **Instructions**: ERROR IN ONE CURED BY THE OTHERS. When the instructions in a case, taken as a whole, properly present it to the jury, the fact, that one of them standing alone would be misleading, will not cause a reversal of the judgment of the trial court.

4. ———: ———. But *held* by BOND, J., *dissenting*, that the one instruction above referred to was more than misleading and was inconsistent with the others, since it directed a verdict for the plaintiff without requiring a finding of the facts essential to the right of recovery, and that the error therefore was not cured by the other instructions.

*Appeal from the Crawford Circuit Court.*—HON. C. C. BLAND, Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*Lee, McKeighan, Ellis & Priest*, for appellant.

(1) The court erred in giving instruction number 1. This instruction entirely ignores any supposed or alleged negligence or want of care on the part of the defendant or its superintendent. It makes the fact of

a supposed unsafe condition, and the fact of a rock falling, sufficient to fix the liability of the defendant to plaintiff without any regard as to whether or not the defendant or its superintendent had been guilty of negligence or want of care. Again, the phrase "unsafe condition" is not connected with the loose rock in such a manner as to show that the unsafe condition refers to a loose rock. The two facts are entirely separated in the the instruction and do not appear to have any relation to each other. Again, the general instruction with respect to "unsafe condition" is entirely too obscure and indefinite to found a verdict on in such a case. A master is not a warrantor or insurer of his servants or employes' safety. *Hayden v. Mfg. Co.*, 29 Conn. 548; *Ballon v. Railroad*, 54 Wis. 259; *Porter v. Railroad*, 71 Mo.; *Anderson v. Clarke*, 29 N. E. Rep. 589; *Heath v. Whitebreast Coal, etc., Co.*, 65 Iowa, 737. This instruction also ignores whether or not the unsafe condition was one which could have been prevented by the exercise of even the greatest care by the defendant. This was erroneous because the evidence of defendant showed without contradiction that nothing more could have been done than was done to make the mine safe. (2) The verdict is against both the weight of the evidence and the entire evidence and even against the instructions given. The evidence shows that all precautions were taken that could have been taken; that the rocks had been falling down before this, but that plaintiff knew it and that the pickers and shovelers watched for each other, and that the injury resulted from an accident the risk of which plaintiff knew, or ought to have known, and must be held to have assumed. *Watson v. Kansas & Texas, Coal Co.*, 52 Mo. App. 366; *Walsh v. Railroad*, 27 Minn. 367; *Olson v. McMullen*, 24 Minn. 94; *Anderson v. Clarke*, 29 N. E. Rep. 589.

*J. T. Woodruff* and *L. B. Woodside*, for respondent.

BIGGS, J.—An action for personal injuries received by the plaintiff while engaged as a day laborer in the defendant's iron mine. The mine is represented as having been excavated in a circular form, and is about one hundred and twenty feet deep. There is what is called a lower lift and an upper lift. The upper lift is about one hundred feet from the entrance to the mine, and is about three hundred yards in circumference. The lower lift is a smaller excavation on one side of the upper lift. The ore is elevated from the upper lift by an inclined railway. At the foot of the railway is a turn table in the center of the upper lift with four or five railroad tracks radiating therefrom to the sides of the mine. For the first twenty-five or thirty feet from the level of the upper lift the ascent is perpendicular, and for the remainder of the distance it is at an angle of about forty-five degrees. The perpendicular portion of the wall is iron ore, the slope is composed of dirt, gravel and stone. While the plaintiff was at work on the upper lift, he was struck by a stone which fell from the slope of the mine. It is claimed that the negligence of the defendant caused the injury.

The petition, after charging that Patrick J. Whalen was the superintendent of the mine, averred that the defendant wrongfully, negligently and carelessly suffered and permitted said mines to become and remain in a condition that rendered them insecure, unsafe and extremely hazardous for men to work them, in this, that one of the said mines was continually caving in and rocks falling therefrom down into the mines, and that this was known to the defendant and to its superintendent but not to the plaintiff; that the

superintendent wrongfully, carelessly and negligently ordered and directed the plaintiff, who it is charged was utterly ignorant of the danger and hazard, to work at a particular place in the mine and immediately under the wall, and to separate the dirt from the ore, and to shovel the same into ore buggies; that the plaintiff went to work, and, while working, a large rock fell from the wall and struck him on the back and hip, etc.

The answer admitted that Whalen was the superintendent of the mine as alleged, and that the plaintiff at the time he received the injuries was in the employ of the defendant. All allegations of negligence were denied, and it was averred that the plaintiff entered the service with full knowledge of the attending dangers, and that his injuries were to be attributed to his own recklessness or carelessness. There was a judgment for plaintiff for $2,500 and the defendant has appealed.

It is claimed that the condition of the slope is such, being composed of loose dirt, gravel and small stones, that the falling of pebbles and stones is unavoidable; that it was impossible for defendant to adopt safeguards sufficient to fully protect its employes against dangers arising therefrom; and that the evidence conclusively showed that the defendant adopted all reasonable means to minimize such attending risk. It is also contended that the evidence showed without contradiction that the plaintiff was an experienced miner, had worked in this particular mine off and on for ten years prior to the time he received his injuries, and that he had engaged in the work with full knowledge of the inevitable risk or hazard of the employment.

As this assignment challenges the sufficiency of the proof to sustain the judgment, a brief reference to the facts is necessary. The plaintiff's evidence tended

to prove that prior to the accident he had been working on the lower lift; that under the order of Whalen he quit work there about two o'clock in the afternoon, and commenced to work at a place near the perpendicular wall on the upper lift, where he had never worked before; that he had been at work about fifteen minutes when the first stone that fell (which weighed about six pounds) struck him on the back, inflicting permanent injuries; that during the day pebbles and stones of the size mentioned had been falling continually at the place where the plaintiff was instructed to work, and that Whalen knew of it and that the defendant did not know of it; that the weather was such that the dirt on the face of the slope would freeze at night and thaw during the day, thereby tending to loosen the pebbles and stones and to cause them to fall; that there was a seepage of water on the slope above where the plaintiff was at work, which was calculated to render that particular spot more dangerous than other portions of the mine, and that the plaintiff was not aware of this, and that Whalen did know or ought to have known of it.

On the other hand the defendant's evidence tended to prove that it was impossible to prevent the falling of stones, or to guard against all danger to the miners therefrom; that at short intervals the defendant was in the habit of having the surface of the slope raked off, and that its superintendent had this done either two or three days before the accident; that, for the better protection of the employes, it was ordered that the pickers should watch for falling stones while the shovelers shoveled, and that the shovelers should in turn watch while the pickers were at work; but there was no evidence that any one was watching at the time plaintiff was hurt, or that there was a gang of pickers then at work at that place; that the plaintiff

had been repeatedly warned to watch for falling stones, which warnings he had disregarded, but there was no evidence that he was warned at the time he was hurt, or that he knew or had any means of knowing that stones had been falling during the day at that place.

We readily concede the proposition that from the extent of the surface of the slope it was impracticable, if not impossible, for the defendant to adopt means which would effectually prevent pebbles and stones from falling; but it was nevertheless a duty which the defendant owed to its employes to adopt all reasonable means and precautions to lessen the danger. Recognizing this obligation, the defendant caused the slope of the mine to be raked off every few days, and its superintendent also ordered the men when not otherwise engaged to watch for each other. It is in evidence that Whalen knew that pebbles and large stones had been falling continually during the day at that particular place; that he also knew that the freezing and thawing of the surface was calculated to loosen the stones, and that there was a seepage of water on the side of the slope from where the stones were falling; therefore a failure on his part to stop the work and rake off the slope, or at least to notify the plaintiff of the special peril, was a neglect of duty which he as the representative of the defendant owed to plaintiff, and the defendant must answer for the resulting injuries received by the plaintiff, unless the latter knew or might have known by the exercise of ordinary care the extent of the risk. Concerning the plaintiff's knowledge of the special peril, there is no pretense that he was actually informed of it, and the uncontradicted evidence is that, prior to the time he was put to work on the upper lift, he was working on the lower lift where it was not likely that his attention would have been attracted to the falling stones. It is undisputed that the stone fell from the

slope. As the plaintiff was working near the perpendicular wall, it was impossible for him to observe the condition of the slope, or to see the stone before it struck him. This evidence we think tended to prove that Whalen was derelict in his duty, and it was fairly inferable that his negligence was the proximate cause of the plaintiff's injuries.

We have been referred to the recent case of *Watson v. Kansas & Texas Coal Company*, 52 Mo. App. 366. In that case a large stone, which composed a part of the roof of a coal mine, fell and killed the plaintiff's husband. It appeared without contradiction that the danger was patent and was actually known to the deceased. In the case at bar Deweese knew that stones were liable to fall from the slope, but he did not know that on the day he was injured the stones had been falling in that particular place in unusual numbers. In obeying the orders of Whalen he had a right to presume that the latter had adopted the usual precautions, and that in going to work he would only incur the usual risk attending the employment. Therefore we think that the case was properly submitted to the jury, and, if it was properly tried in other respects, the judgment must be affirmed.

The defendant complains of the plaintiff's first and second instructions which read:

"1. The court instructs the jury that, if they believe from the evidence that the mine and the slope thereof at the place where plaintiff claims to have been injured was in an unsafe condition, and that its condition was known to its superintendent Whalen, and that the same was not known to plaintiff, and that a stone fell from said bank or slope and struck plaintiff, whereby he was injured, the jury will find the issues for the plaintiff, unless they further find that the danger was so patent and obvious that a man of ordinary intel-

ligence and observation in his situation would have seen it.

"2. The court instructs the jury that, if it appears from the evidence that the defendant was operating an iron mine and had the plaintiff employed therein, and that working in said mine was dangerous at the time, then it was the duty of the defendant to use every reasonable precaution to insure the safety of its employes; and if the jury find from the evidence that, through the negligence of defendant, loose rock and stone were permitted to remain on the face or slope of such mine, and that the plaintiff was working under said slope and was not aware of the existence of such loose rocks and stones, and a rock fell therefrom and struck the plaintiff, whereby he was injured, and the defendant did not use reasonable precaution under all circumstances to insure plaintiff from injury by the falling of rocks or stones, then the jury should find the issues for the plaintiff unless the danger was so patent that an ordinarily observant man in his situation would have observed it."

The instructions given by the court at the instance of the defendant are as follows:

"1. The court instructs the jury that, to entitle the plaintiff to recover in this suit, it must appear from the evidence that the injury complained of was occasioned by the want of attention, carelessness or negligence on the defendant company or its servants, as charged in the declaration, and was not simply the result of an accident; and if you believe from the evidence that the injury to plaintiff resulted from an accident which could not have been forseen or guarded against by the exercise of ordinary and reasonable care and prudence on the part of the defendant, then the plaintiff cannot recover, and you should find for the defendant.

"2. The court instructs the jury that ordinary care, as used in these instructions, depends upon the circumstances of each particular case, and is such care as a person of ordinary prudence and skill would usually exercise under the same or similar circumstances."

"7. The court instructs the jury that, if they believe from the evidence that the mine of the defendant was hazardous on account of debris and loose stones falling into it, and that the plaintiff knew of the hazardous condition of the mine, then he took upon himself the risk of such hazard by voluntarily working in it. And if the jury further believe from the evidence that the defendant used such care and precaution in the management of its mine as was reasonably necessary to protect its employes from its hazardous condition, and was guilty of no negligence toward the plaintiff, then the plaintiff cannot recover in this action, and your verdict should be for the defendant."

The objection made to plaintiff's first instruction is that it ignores any supposed negligence or want of care on the part of Whalen, or that the alleged unsafe condition of the slope could have been remedied by the exercise of due care. The instruction is inartificially drawn, and standing by itself would be misleading. But the two instructions, when considered together, presented the issues to the jury in a way that the jury could not have been misled as to the true issues, especially when the defendant's own instructions are considered.

The jury were told in effect that, if the condition of the slope was unsafe by reason of loose stones; that Whalen knew of the unsafe condition of the mine and the plaintiff did not; and that by reason of such unsafe condition a stone fell and struck plaintiff; and that the defendant did not use reasonable care under the circumstances to prevent the injury; then the plaintiff was

entitled to recover, unless the danger was so patent that a man of ordinary intelligence and observation in the situation in which the plaintiff was placed would have observed it. It may be added that similar instructions given in the case of *Aldridge v. Midland Blast Co.*, 78 Mo. 565, were expressly approved by the supreme court.

The court refused the following instructions asked by the defendant:

"3. The jury are instructed that, where a person enters into the service of a mining company, he thereby undertakes to run all the ordinary risks incident to the employment, including his own negligence or unskillfulness and that of his fellow-servants who are engaged in the same line of duty, provided the mining company has taken reasonable care and precaution to engage competent servants to discharge the duties assigned to them.

"4. The court instructs the jury that in the term fellow-servant, as used in these instructions, are included all who under the direction and management of the defendant company or Patrick J. Whalen, its superintendent, were engaged with the plaintiff in the prosecution of the same common work in which they were all engaged at the time of the alleged injury of plaintiff, without any dependence upon or relation to each other except as co-laborers with plaintiff at the time without rank.

"5. If the jury believe from the evidence that the plaintiff Deweese was engaged in the employment of the defendant when he was injured, and that such injury was received while in the discharge of his duties as such employe, and if the jury further believe from the evidence that such injury was occasioned either by his own negligence or carelessness, or by that of his fellow-servants engaged in the same line or character of work as explained in these instructions, then the

jury should find the issues for the defendant company, provided you further believe from the evidence that the defendant was not guilty of any lack of care or prudence in selecting or retaining such fellow-servants to discharge the duties assigned them.''

These instructions were properly refused, because there is no evidence that the plaintiff's injuries were caused by the negligence of one of his fellow-servants. There is some evidence that the pickers and shovelers were to watch for each other, but it was not shown that there were any pickers there or that there were any watching while the plaintiff worked. Even though there had been such evidence, we would then have a case of combined negligence, which would not excuse the defendant. It is only where the negligence of a fellow-servant is the whole cause of the injury that the master is excused. *Young v. Schickle, etc., Iron Co.,* 103 Mo. 324.

We cannot say that the judgment is excessive. The plaintiff's physician testified that he had examined the plaintiff a short time before the trial, and that his injuries were serious and permanent, and that there was great danger that they would bring about fatal kidney troubles.

The judgment of the circuit court will be affirmed. Judge ROMBAUER concurs in this opinion. Judge BOND is of the opinion that the instructions asked by the defendant and refused by the court ought to have been given. Therefore he dissents.

### ON MOTION TO CERTIFY.

BOND, J.—The court at the request of the plaintiff gave the following instruction as follows, to-wit:

''The court instructs the jury that, if they believe from the evidence that the mine and the slope thereof at the place where plaintiff claims to have been injured

was in an unsafe condition, and that its condition was known to its superintendent Whalen, and that the same was not known to plaintiff, and that a stone fell from said bank or slope and struck the plaintiff, whereby he was injured, the jury will find the issues for the plaintiff, unless they further find that the danger was so patent and obvious that a man of ordinary intelligence and observation in his situation would have seen it."

And the court seemingly of its own motion gave the following instructions:

"The court instructs the jury that, to entitle the plaintiff to recover in this suit, it must appear from the evidence that the injury complained of was occasioned by want of attention, carelessness or negligence on the defendant company or its servants as charged in the declaration, and was not simply the result of an accident; and if you believe from the evidence that the injury to plaintiff resulted from an accident which could not have been foreseen or guarded against by the exercise of ordinary and reasonable care and prudence on the part of the defendant, then the plaintiff cannot recover, and you should find for the defendant.

"The court instructs the jury that, if they believe from the evidence that the mine of the defendant was hazardous on account of debris and loose stones falling into it, and that the plaintiff knew of the hazardous condition of the mine, then he took upon himself the risk of such hazard by voluntarily working in it. And if the jury further believe from the evidence that the defendant used such care and precaution in the management of its mine as was reasonably necessary to protect its employes from its hazardous condition and was guilty of no negligence towards the plaintiff, then the plaintiff cannot recover in this action, and your verdict should be for the defendant."

I think instruction number 1 given by the court at the instance of the plaintiff was not only "misleading," as is conceded in the opinion of the majority of the court on the hearing, but I deem that instruction in conflict with instructions numbers 1 and 7, given (apparently) on the court's own motion. The former instruction *excludes* negligence of the defendant, and the others *include* it as a basis of recovery. This is reversible error. *Bluedorn v. Railroad*, 108 Mo. 439; *Stevenson v. Hancock*, 72 Mo. 612.

In the case first cited the rule is stated as follows: "It is reversible error to give conflicting instructions, no matter at whose instance they are given." I do not understand the supreme court in *Aldridge v. Midland Blast Co.*, 78 Mo. 565, to do more than hold that an instruction similar to number 1, requested by plaintiff in this case, could *consist* with another instruction supplying the element of danger patent and obvious to ordinary observation; and that, failing to include this element, both of them would be defective in a suit predicated on a negligent command to work in a place of extra hazard and danger. I do not think the court in that case undertook to give a stereotyped form of an instruction applicable to all cases, or to a case where the other instructions were inconsistent.

The court held (Aldridge case) in effect that the omission to include the negligence of plaintiff was a defect in the instruction then before it, but *non constat* that the instruction, although remedied in this particular, was not defective in some other.

It is neither wise practice nor fair to the judiciary to assume that their approval of an instruction is intended to go beyond the facts then before the court, and the *points of objection then* urged. The courts are loth to establish any rule not essential to the decision of the issues and facts in judgment.

In the case at bar the theory presented by plaintiff's instructions was an assumed case of negligence as to the condition of the mine—not a case of liability for ordering a servant into a place of danger unknown to him, but known to the employer. It is well settled that on appeal a party is bound by the theory of the case presented by him on the trial, and that the issues then accepted cannot be abandoned on review of the instructions applicable to them.

I do not see how the conflict between instruction number 1 (requested by plaintiff) and the others given by the court could be avoided upon any theory of plaintiff's cause of action. I think that conflict is a fortiori palpable, when it is observed that it was a case of unsafety of the mine, and not a case of ordering plaintiff into unknown danger, that was tried below. I also think the instructions requested by the defendant, presenting the hypothesis both of the negligence of his fellow-servant and his own assumption of the risks incident and natural to his employment, should have been given. I think these issues were presented in the pleadings, and that there was evidence tending to sustain them. The issue as to contributory negligence was impliedly presented by the averment in the plaintiff's petition that there was extra hazard in the working of the defendant's mine, which was known to defendant and unknown to plaintiff, and by the denial of these allegations in the answer. Aldridge v. Furnace Co., 78 Mo. 564. The reply of plaintiff went still further and expressly denied all contributory negligence whatever.

Under the rule laid down by our supreme court the negligent acts of a fellow-servant are included in the risks assumed upon taking employment. Steffen v. Mayer, 96 Mo. 420, 422. I deem the decision of the majority of this court in the case at bar contrary to

the law as declared in the decisions of the supreme court cited herein.

The clerk of this court is hereby ordered to certify and transfer the original papers on file in this case, and a transcript of the proceedings of this court therein, to the supreme court, as provided in section 6 of the amendment of article 6 of the constitution. Judge BIGGS concurs in the order certifying the case. Judge ROMBAUER is absent.